IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CP STONE FORT HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16 C 4991 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| JOHN DOE(S), | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff CP Stone Fort Holdings, LLC has brought a one count amended complaint against certain John Doe defendants alleging that those defendants engaged in a scheme to manipulate the United States Treasury Markets in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and Rules 10b-5(a) and 10b-5(c) promulgated thereunder. Defendant John Doe #1[1] has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the amended complaint fails to state a manipulation claim because it fails to allege: (1) manipulative acts; (2) facts giving rise to a strong inference of scienter; (3) reliance; and (4) loss causation.[2] For the reasons described below, defendant's motion to dismiss is granted.

---

[1]Plaintiff does not yet know the names of the Doe defendants because trading in the secondary U.S. Treasury Markets is anonymous. John Doe #1's motion to dismiss the original complaint triggered the Private Securities Litigations Reform Act's ("PSLRA") automatic stay of discovery. 15 U.S.C. § 78u-4(b)(3)(B). The court denied plaintiff's request to lift the stay pending resolution of the instant motion to dismiss.

[2]Defendant also argues that plaintiff lacks standing and that its claims are barred by the statute of repose. Both of these arguments were rejected by the court in its previous opinion and will not be revisited. C.P. Stone Fort Holdings, LLC v. Does, 2016 WL 5934096 (N.D. Ill. Oct. 11, 2016) (C.P. Stone I).

# FACTS[3]

Plaintiff alleges that defendants have violated the Exchange Act and Rule 10b-5 by manipulating the U.S. Treasury Markets. A full explanation of plaintiff's theory and factual allegations can be found in C.P. Stone I. Familiarity with those allegations is presumed and they will not be repeated here. In general, plaintiff alleges that defendants have engaged in "spoofing" or "layering," which is a three step process by which defendants first entered orders (either buy or sell) that they did not intend to fulfill (the "Deceptive Orders"), but which were large enough to affect the market for the particular security. After the market reacted to the large Deceptive Orders, defendants then "flashed" the market by cancelling the Deceptive Orders and simultaneously entering "Aggressor Orders" in the opposite direction for the same security at the same price. Those Aggressor Orders were then matched and executed with bids or offers from other market participants, including plaintiff, that were made in response to the Deceptive Orders. By doing this, plaintiff alleges that defendants were able to sell U.S. Treasury Notes and Bonds at artificially high prices, and buy U.S. Treasury Notes at artificially low prices.

Plaintiff alleges that defendants' manipulation is characterized by a "well defined pattern." First, defendants entered the Deceptive Orders. While these orders were on the order book (the "build-up phase") they created a false appearance of market depth and momentum in one direction. The Deceptive Orders typically represented a significant portion of the market, typically representing about "200% of the posted size at the best available price." Defendants then cancelled the Deceptive Orders and "virtually simultaneous to the cancels," entered one or

---

[3]The facts are taken from plaintiff's amended complaint and are presumed true for purposes of evaluating defendant's motion to dismiss. Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995).

more Aggressor Orders in the opposite direction but at the same price as the Deceptive Orders, thereby trading "against the remaining available securities at that price" (the "Flash Phase").

According to plaintiff, it is this well-defined pattern, and the frequency, speed and precision with which the build-up and flash progression took place, that "eliminates the possibility that this pattern was anything other than orchestrated." Plaintiff alleges that the fact that the cancel orders and the "flash" orders occurred within milliseconds evidences a premeditated coordination, because defendants "could not have legitimately changed their minds as to the direction of the market so quickly, so often and with such precision." Additionally, the fact that defendants typically cancelled Deceptive Orders across multiple markets of U.S. Treasury securities in multiple product markets including U.S. Treasury future markets offered on the Chicago Board of Trade ("CBOT") demonstrates defendants' intent to manipulate the market for U.S. Treasury Securities.

**DISCUSSION**

Defendant argues that despite its considerable detail, the amended complaint fails to state a claim for a Rule 10b-5 violation. A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. Sprint Spectrum L.P. v. City of Carmel, Ind., 361 F.3d 998, 1001 (7th Cir. 2004). The complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 549, 555 (2007). To be plausible on its face the

complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Because plaintiff's Section 10(b) claim sounds in fraud, it is also subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b), which provides that in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The complaint must provide "the who, what, when, were and how" of the alleged fraud. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990).

In addition to Rule 9(b), to check against pleading abuses in private securities fraud suits, the PSLRA has further heightened the pleading requirements. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314-15 (2007). In particular, the PSLRA imposes a substantially higher standard of pleading scienter. The complaint must "with respect to each act or omission . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(3)j. The required state of mind is an "intent to deceive, manipulate or defraud." Higginbotham v. Baxter Int'l. Inc., 495 F.3d 753, 756 (7th Cir. 2007). For an inference to be "strong," it must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, 551 U.S. at 324.

Section10(b) makes it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . .." 15 U.S.C. § 78j(b). Rule 10b-5 clarifies that it is unlawful in connection with the purchase or sale of any security:

(a) to employ any device, scheme or artifice to defraud;

4

(b) to make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made in light of the circumstances under which they were made, not misleading; or

(c) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

To state a manipulation claim under §10b and Rule 10b-5, plaintiff must plead that: (1) in connection with the purchase or sale of securities; (2) defendants engaged in deceptive or manipulative conduct; (3) reasonable reliance on the artificial stock price; (4) plaintiff's reliance proximately caused plaintiff's damages; and (5) defendant acted with scienter. See G.F.L. Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189, 207 (3d Cir. 2001).

**MANIPULATIVE CONDUCT**

Defendant first argues that the amended complaint fails to allege manipulative conduct. According to the Supreme Court, the word "manipulative" connotes "intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 199 (1976). "The term refers generally to practices, such as wash sales, matched orders or rigged prices, that are intended to mislead investors by artificially affecting market activity." Sante Fe Indus. Inc. v. Green, 430 U.S. 462, 476 (1977).[4] Such conduct closely resembles fraud and is patently manipulative, serving no purpose other than to transmit false information to the market and thereby artificially affect price. Manipulative intent can be inferred from the conduct itself. Masri, 523 F. Supp. 3d at 367.

---

[4]"A wash sale is a sale of securities made at or about the same time as a purchase of the same securities . . . resulting in no change of beneficial ownership. A matched order is an order to buy and sell the same security at about the same time, in about the same quantity, and at about the same price." S.E.C. v. Masri, 523 F.Supp.2d 361, 367 n.8, 9 (S.D.N.Y. 2007).

5

As the court noted in C.P. Stone I, defendants' activity does not fall into those categories of patently manipulative conduct because there is nothing necessarily improper or illegitimate about placing passive orders in the order book and then reversing position. C.P. Stone I, 2016 WL 593409 at *6. But, market manipulation can be accomplished through otherwise legal means, such as short sales, and large or carefully timed purchases or sales of securities. Id.

In C.P. Stone I, this court identified a circuit split on the issue of whether a plaintiff claiming manipulation had to allege that the manipulator injected inaccurate information into the market or created a false impression of market activity as held by the Third Circuit in GFL Advantage Fund, 272 F.3d at 204-05, or whether "manipulation can be illegal solely because of the actor's purpose," as held by the D.C. Circuit in Markowski v. SEC, 274 F.3d 525, 529 (D.C. Cir. 2001). Ultimately, this court dismissed plaintiff's original complaint because in one sense each offer and bid was legitimate and could have been matched at any time by a willing participant placing an Aggressor Order. And, had the offers or bids been matched, the market reaction would have been legitimate. Therefore, the court concluded that plaintiff's theory was simply that "if a subset of orders was ultimately cancelled, those orders, in hindsight, must never have been intended to be executed." C.P. Stone I, 2016 WL 5934096 at *6.

Defendant argues that the amended complaint has added nothing to alter the court's previous conclusion. In response, plaintiff first insists that the extensive pattern of Deceptive Orders and flashings identified in the amended complaint is sufficient to support a claim of manipulation under either the Third Circuit or the D.C. Circuit interpretation. In addition, the amended complaint has identified actions taken by defendants to ensure (as much as possible) that the Deceptive Orders would not be executed. In particular, the amended complaint alleges

that defendants placed their Deceptive Orders in the queue behind, on average, $27 million in existing orders. "On average, less than one trade occurred for a notional amount of less than $2 Million once the Defendants placed the Deceptive Orders in the Order Book." The Deceptive Orders then shifted the market perception of theoretical value, significantly minimizing the possibility that defendants' Deceptive Orders would be executed.

The court agrees with plaintiff that by alleging a pattern of essentially parking the Deceptive Orders behind legitimate but much smaller orders, it has sufficiently alleged that defendants have both injected inaccurate information into the market, created a false impression of market activity, and had an illegal intent. Indeed, the Supreme Court has stated that there need not be a specific written or oral statement before there can be liability under § 10b or Rule 10b-5. "Conduct itself can be deceptive." Stoneridge Inv. P'ners., LLC v. Scientific-Atlanta, 552 U.S. 148, 159 (2008). Plaintiff has alleged that defendants communicated an "artificial or phoney price of a security" to persons who, in reliance upon a misrepresentation that the price was set by market forces, purchase the securities." Fezzani v. Bear, Stearns & Co., Inc. 716 F.3d 18, 25 (2d Cir. 2013). Consequently, the court concludes that the amended complaint sufficiently alleges manipulative activity.

## **SCIENTER**

Next, defendant argues that the amended complaint fails to allege scienter. The court disagrees. Under the PSLRA, the plaintiff must allege "facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(3)j. The required state of mind is an intent to deceive, manipulate or defraud. Higginbotham, 495 F.3d at

7

756. An inference is strong if it is cogent and at least as compelling as any opposing inference one could draw from the facts alleged. Tellabs, 551 U.S. at 324.

Defendant argues that the amended complaint merely alleges in conclusory fashion that "defendants entered orders that they did not intend to execute, cancelled those orders, and then entered orders in the opposite direction to create the appearance of legitimate trading in one direction." According to defendant, this conclusory allegation is insufficient to satisfy the PSLRA's pleading requirements.

Neither party has directed the court's attention to any case authority applying the PSLRA's pleading requirements in a spoofing case, and this court's own research has revealed none. The PSLRA was passed, however, to curb "abusive litigation by private parties." Tellabs, 551 U.S. at 313. The statute's exacting pleading requirements were implemented "to screen out frivolous suits, while allowing meritorious actions to move forward."

In the instant case, there is nothing frivolous about plaintiff's allegations. Spoofing is a very real problem identified by SEC as a cause for concern. See John I. Sanders, Spoofing: A Proposal for Normalizing Divergent Securities and Commodities Futures Regimes, 51 Wake Forest L. Rev. 517, Summer 2016. Plaintiff has identified a consistent pattern of placing thousands of Deceptive Orders, cancelling those orders and then flashing and reversing position, across multiple markets. The inference of intent to manipulate is both cogent and at least as compelling (and perhaps more compelling) than any opposing inference one could draw. Indeed, it is difficult to identify any other factual allegation that plaintiff could add, particularly since it does not know defendants' identities. Certainly, defendant has not identified any specific allegation that is lacking. If the instant allegations are insufficient to satisfy the PSLRA's

heightened pleading requirement, it is doubtful that a private spoofing case could ever be brought. Yet, the purpose of the Act is to curb frivolous suits and to allow meritorious actions to proceed. Application of the PSLRA pleading requirements to bar the instant action would defeat rather than fulfill that purpose. Consequently, the court concludes that the amended complaint adequately alleges scienter.

**RELIANCE**

Defendant next argues that plaintiff has failed to allege reliance or "transaction causation." According to defendant, by alleging that it was entitled to rely on the "integrity of the order book," plaintiff is asserting a "fraud-on-the-market" theory that the Supreme Court has rejected except in cases involving material misrepresentations or omissions. See Desai v. Duetsche Bank Securities, Ltd., 573 F.3d 931, 941 (9th Cir. 2009)(citing Stone Ridge, 552 U.S. at 165 (2008)).

The reliance element "insures that there is a proper connection between a defendant's [manipulative conduct] and a plaintiff's injury." Halliburton Co. v. Erica P. John Fund, Inc., __ U.S. __, 134 S.Ct. 2398, 2407 (2014). In Basic Inc. v. Levinson, 485 U.S. 224, 225 (1985), the Supreme Court recognized that requiring direct proof of reliance, particularly in cases of alleged misrepresentations, "would place an unnecessarily unrealistic evidentiary burden on the Rule 10b-5 plaintiff who has traded on an impersonal market," because "even assuming an investor could prove that he was aware of the misrepresentation, he would still have to 'show a speculative state of facts, i.e., how he would have acted . . . if the misrepresentation had not been made.'" Halliburton, 134 S.Ct. at 2407 (quoting Basic, 485 U.S. at 245).

9

To address these concerns, the Supreme Court has found a rebuttable presumption of reliance in two circumstances. "First, if there is an omission of a material fact by one with a duty to disclose, the investor to whom the duty was owed need not provide specific proof of reliance." Stoneridge, 552 U.S. at 159 (citing Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153-54 (1972)). Second, under the fraud-on-the-market doctrine, reliance is presumed when the statements at issue become public. The public information is reflected in the market price of the security. Then it can be assumed that an investor who buys or sells stock at the market price relies upon the statement. Id. (citing Basic, 485 U.S. at 247).

Defendants cites to Stoneridge as demonstrating that the Court has limited the presumption of reliance to cases involving omissions or misstatements, which are brought under Rule 10b-5(b), and cannot be invoked by plaintiffs alleging spoofing or "deceptive acts" which must be brought under Rule 10b-5(a) or (c). It is true, as defendant argues, that the Court has never directly stated that the presumption can be applied in "deceptive acts" or manipulation cases, but neither has it ever directly rejected its use.

In Stoneridge, investors brought a securities fraud class action against a corporation providing cable television services, as well as its executive's independent auditors, and the corporation's vendors and customers, alleging that the corporation entered into sham transactions with its vendors and customers that improperly inflated the corporation's reported operating revenues and cash flows. The district court dismissed the claim against the vendors and customers and the Eight Circuit affirmed. The Supreme Court held that the rebuttable presumption of reliance by investors did not apply to the alleged deceptive conduct of the corporation's vendors and customers. It did so only after first recognizing that conduct without

specific oral or written statements can indeed violate both §10(b) and Rule 10b-5. Stoneridge, 552 U.S. at 159. It then stated that neither recognized presumption applied in the case before it because "[r]espondents had no duty to disclose; and their <u>deceptive acts were not communicated to the public</u>." Id. (emphasis added). No member of the investing public had knowledge, either actual or presumed, of the respondent's deceptive acts during the relevant time period. Therefore, the petitioner could not show reliance upon any of the respondent's actions except in an indirect chain that the court found too remote for liability. Id.

Thus, Stoneridge did not reject the use of a fraud-on-the-market presumption of reliance based on "deceptive acts." Rather, it rejected the use because the respondents' acts were not made public. Id. The case says nothing about a situation, such as the instant case, where the defendants' deceptions were communicated to the investing public when defendants placed the Deceptive Orders onto the order book, thereby affecting the price of the security.

The court does agree with defendant that plaintiff's attempt to rely on the "integrity of the order book" is nothing more than an attempt to invoke the fraud-on-the-market presumption. The order book is the market. As pled, however, the court concludes that plaintiff is entitled to the fraud-on-the-market presumption of reliance. Consequently, the court concludes that the amended complaint adequately pleads reliance or transaction causation.

## LOSS CAUSATION

It is not enough, however, to plead transaction causation. Plaintiff must also plead that defendants' deceptions proximately caused plaintiff's damages ("loss causation"). Defendant argues that plaintiff has, at most, alleged that it either purchased U.S. Treasury securities at an artificially inflated price, or that it sold securities at an artificially low price, but has not tied

11

those purchases or sales to any loss because the complaint fails to allege the reversal of each transaction. For example, for those securities that plaintiff alleges it bought at an artificially high price, it fails to allege that it then sold those securities not only at a lower price, but that the lower price was the result of the cancellation of the Deceptive Orders, rather than legitimate market forces.

Under Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 342-43 (2005), it is not sufficient to show that securities were purchased at an inflated price and later sold at a much lower price, because many different factors might account for the drop in price:

> If the purchaser sells later after the truth makes its way into the market place, an initially inflated price might mean a later loss. But that is far from inevitably so. When the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the earlier misrepresentation, but change to economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price. (The same may be true in respect to a claim that a share's higher price is lower than it would otherwise have been – a claim we do not consider here) Other things being equal, the longer the time between purchase and sale, the more likely that this is so, i.e., the more likely that other factors caused the loss.

The instant complaint alleges very little about plaintiff's loss. Paragraph 36 alleges that "[p]laintiff has identified thousands of instances of manipulation in which plaintiff was damaged in the markets for U.S. Treasury securities during the 2013 and 2014 calendar years," and then attaches as an exhibit an excel workbook spreadsheet identifying the instances of trades plaintiff entered, and showing the cancel and flash. Paragraph 37 then alleges that the "above-described manipulation caused millions of dollars in damages to [plaintiff]." Under Dura, these allegations are insufficient.

To get around this problem, plaintiff argues, relying on In re Initial Pub. Offering Sec. Litig., 297 F.Supp.2d 668, 674 (S.D.N.Y. 2003), that pleading loss causation in a manipulation case, as opposed to a misrepresentation case like Dura, is different because "a market manipulation is a discreet act that influences stock price. Once the manipulation ceases, however, the information available to the market is the same as before, and the stock price gradually returns to its value." Id.

In In re Initial Pub. Offering, the court distinguished between the requirements for pleading loss causation in omissions and misrepresentation cases versus market manipulation cases, concluding that pleading artificial inflation, without more, is insufficient in cases alleging omissions or material misrepresentations, but such allegations are sufficient in manipulation cases. Id. at 674-75. This is so, according to the court, because in manipulation cases "it is fair to infer that the inflationary effect must inevitably diminish over time," and "[i]t is that dissipation – and not the inflation itself – that caused plaintiff's loss." Id.

Although the reasoning used by the court in In re Initial Pub. Offering has some appeal, the decision is questionable given that it predates Dura. Dura makes clear that no loss is realized simply by purchasing at an inflated price. The loss is realized only when the security is sold at a lower price, and the lower price is the result of the defendant's manipulation rather than legitimate market forces. Plaintiff's complaint contains no such allegations, and thus fails to allege loss causation. Consequently, the amended complaint fails to state a claim and is dismissed.

## **CONCLUSION**

For the reasons stated above, defendant Doe #1's motion to dismiss the amended complaint (Doc. 37) is granted.

**ENTER:     March 22, 2017**

_____
**Robert W. Gettleman
United States District Judge**